IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Ted Miles Ellison, | ) Civil Action No.: 6:09-3093-JMC-BHH |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| | ) **OF MAGISTRATE JUDGE** |
| Caddell Construction Co Inc., | ) |
| Defendant. | ) |

This matter is before the Court on the defendant's motion to dismiss [Doc. 38]. The plaintiff is proceeding *pro se.* On August 26, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion to dismiss. [Doc. 39.] The plaintiff has filed two responses to the motion to dismiss. [Doc. 40, 46.]

## BACKGROUND

The plaintiff, a former employee of the defendant, contends that he was injured while working at a construction site of the U.S. Consulate, located in Juarez, Mexico. Specifically, the plaintiff contends that while he was under the duress of those job-related injuries, a Shayne Stokes and a Marco Diaz, agents of the defendant, conspired, and did, cause him additional harm by injecting him with a substance intended to mask his job-related injuries. (Compl. at 3.) The plaintiff alleges further that the defendant acted with gross negligence in subsequently failing to provide proper medical care. *Id*. at 4.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted).

## **DISCUSSION**

The defendant contends that the plaintiff's case must be dismissed because the Defense Base Act, 42 U.S.C.A. §§ 1651-1654, is his exclusive remedy. As the defendant represents, Congress enacted the Longshoreman's and Harbor Workers' Compensation Act ("LHWCA") (33 U.S.C. §§ 901-950) in 1927 as an extension of the federal workers' compensation program and to establish a system of uniform federal workers' compensation for injuries to employees in the maritime field. The institution of the LHWCA filled a "gap between the coverage of maritime law and state law created by the Constitution and derivative case law." *Davila-Perez v. Lockheed Martin Corp.*, 202 F.3d 464, 466-67 (1st Cir. 2000). Thereafter, in 1941, Congress extended the provisions contained in the LHWCA by enacting the Defense Base Act to cover injuries to employees working on overseas U.S. military bases with a purpose of providing "uniformity and certainty in availability of compensation for injured employees. . ." *Id*. at 468. As the DBA has limited substantive provisions of its own, the DBA incorporates, when necessary, the provisions of the LHWCA regarding workers' compensation for persons employed on defense projects overseas. 42 U.S.C.A. § 1651(a).

The DBA affords compensation benefits with "respect to the injury or death of any

2

employee" working on a military base or land used for military purposes as well as employees engaged in employment under contract with the United States or a contractor of the United States outside the continental United States. 42 U.S.C.A. § 1651(a). The Act applies to those employees working on "any lands occupied or used by the United States for military or naval purposes in any Territory or possession outside the continental United States." *Id*.

> Critically, the DBA contains an exclusivity provision:
>
>> The liability of any employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor) under this chapter ***shall be exclusive and in place of all other liability of such employer***, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) coming within the purview of this chapter, under the workmen's compensation law of any State, Territory, or other jurisdiction, irrespective of the place where the contract of hire of any such employee may have been made or entered into.

42 U.S.C.A. § 1651(c) (emphasis added).

Including this circuit court of appeals, the various courts of other jurisdictions have apparently agreed that the DBA affords the sole remedy for employees and contractors working on overseas military bases or land used for military purposes. *See Ladd v. Research Triangle Institute,* 335 Fed.Appx. 285, 287, 289 (4th Cir. 2009)*; Lapp v. Maersk Lines Limited, et al.,* 2008 WL 4861651, at *7 (D.S.C. November 7, 2008) (LHWCA)*; see also Flying Tiger Lines, Inc. v. Landy*, 370 F.2d 46, 52 (9th Cir. 1966); *Makris v. Spensieri Painting*, LLC, 669 F. Supp. 2d 201, 206 (D. Puerto Rico 2009).

Not surprisingly, for its complexity and novelty, the plaintiff, as a *pro se* litigant, has made little substantive rejoinder. He has, however, astutely argued, albeit, in a single

3

sentence, that the defendant has not supported its position that the DBA is the exclusive remedy for the "assault and battery claim." [Doc. 46.] The smart implication, of course, being that the DBA does not preclude suits for intentional torts. The defendant anticipated this issue in its footnote 1, which simultaneously attempts to diminish its relevance. (Def. Mot. Dismiss at 6 n.1.)

In his Complaint, the plaintiff asserts the following common law causes of action against the defendant: (1) Gross negligence; (2) Assault and battery; and (3) Conspiracy. Specifically, the plaintiff raises allegations of assault and battery for an alleged injection he received following his workplace injuries. (Compl. at 3.) The plaintiff alleges gross negligence for the defendant's failure to obtain "proper medical treatment" for him. (Compl. at 4.) Finally, the plaintiff alleges a conspiracy among the defendant's employees, Marco Diaz and Shayne Stokes, to allegedly hide the workplace injury. (Compl. at 3.)

As far as the Court can tell, the only federal court to have dealt directly with the issue of whether the exclusivity provision of the DBA includes intentional torts is the Southern District of Texas in a recent and ambitious decision. See *Fisher v. Halliburton,* 703 F. Supp. 2d 639 (S.D. Tex. 2010). That court was strongly persuaded that the central question is whether *the injury* at issue is of the kind that falls within the purview of the Act. In a well-reasoned discussion, the court concluded that the injury must be both "undesired and unexpected," to wit, an "accident" in order to be covered by the DBA. *Id*. at 653. As indicated, the DBA incorporates the provisions of the LHWCA, in regards to overseas incidents of "injury or death of any employee . . . ." 42 U.S.C. § 1651(a). The DBA, itself, does not define the term "injury." *See Fisher*, 703 F. Supp. 2d at 646. Accordingly, the Texas court looked to the LHWCA's definition of injury:

[an] *accidental injury* or death arising out of and in the course of employment,

and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment.

33 U.S.C. § 902(2) (emphasis added). Thus, in order for a plaintiff's claims to fall within the scope of the LHWCA, and thereby the DBA, the injury suffered must be accidental (or the willful acts of third parties as defined by the statute). Thoroughly considered, the court concluded that "accident" under the act should be defined as "undesired and unexpected." *Fisher*, 703 F. Supp. 2d at 653. This Court would adopt the same rationale and conclusion.

Importantly, the Southern District of Texas was adamant to note that the inquiry is easily conflated with a confusingly similar but different question, does the DBA bar suits for intentional torts in federal court as well? The court emphasized that the focus should be on the *nature of the injury* as opposed to the characterization of any common-law tort claim in the plaintiff's Complaint. If the injury, therefore, is "undesired and unexpected," then the DBA is the exclusive remedy, regardless of the styled-claim actually pled by the plaintiff to vindicate it, intentional or otherwise. As the defendant notes, the court concluded, unequivocally, that there is in fact no exception to the exclusivity provision of the DBA, once an injury qualifies for it. *Id*. at 657. This seems a reasonable set of conclusions, although in some respects it splits a semantical hair, insofar as it would be the rare case where the injury resulting from an intentional tort would be characterized as unexpected, in the way meant here. *See id*. at 652. Conceptually, though, it seems the right way to articulate the inquiry, injury-focused rather than claim-focused, considering the scope of the Act in light of the express "injury" definition included in the LHWCA.

Of course, such a conclusion makes the resolution of a motion to dismiss, not based on any actual evidence, dubious. The plaintiff's Complaint, here, speaks of *intended* as

5

opposed to "unexpected" injury. But, to be clear, there are really two sets injuries; and, that fact makes a significant difference. The plaintiff apparently suffered a "job related injur[y]," to which individuals were attending when they allegedly committed the acts predicate to this lawsuit. (Compl. at 3.) Specifically, the plaintiff contends that while he was under the duress of those job-related injuries, a Shayne Stokes and a Marco Diaz conspired, and did, cause him additional harm by injecting him with a substance intended to mask his job-related injuries. *Id*. The plaintiff alleges further that the defendant acted with gross negligence in subsequently failing to provide proper medical care. *Id*. at 4.

The plaintiff's suit, in no respect, seeks justice for the job-related injury, initially suffered, which was ostensibly accidental. Rather, it complains of the subsequent and allegedly intentional acts, which he believes produced intended or, rather, expected additional injury.[1] On the face of the Complaint, therefore, the plaintiff has alleged non-accidental injury,[2] which would appear to remove the entire case from the DBA's ambit, in light of the way the Southern District of Texas, and now this Court, has construed the Act.[3] In other words, the Complaint speaks of more than merely "accidental injury." 33 U.S.C. § 902(2).

---

[1] By this conclusion, the Court does not mean to imply that the injury was specifically known but simply that harm of some generalized kind was expected as a result of the alleged acts.

[2] The Court would not parse the elements of the "gross negligence" claims as to the intent or recklessness required under South Carolina law. Again, the inquiry is whether the injury was *accidental*. As will be discussed, really only discovery can illuminate this issue. Suffice it to say, the Complaint speaks sufficiently of non-accidental injury that the Court would recommend that it not be dismissed, in whole or in part, at this juncture.

[3] It should be reemphasized that neither the Fourth Circuit nor this District have ever traced the matter. The Court does not rely in any respect on the Texas decision, as controlling, but finds it substantially persuasive and well-reasoned, particularly because it was the product of a more exacting adversarial presentation than is possible here.

The defendant has repeatedly emphasized the parties' agreement before the Department of Labor that the plaintiff's claims and injuries, including his treatment and alleged injection, are covered by the DBA. (See Mem. Supp. Mot. Dismiss at 6 n.1.) The defendant argues that such an agreement between the parties now precludes the plaintiff from arguing that some or all of these events/injuries are outside the scope of the Act. First, as far as the Court can tell, no actual evidence of such an agreement is before the undersigned. Second, even to the extent the agreement was made, the Court does not know whether such an agreement would have the type of preclusive or binding effect that the defendant now recommends. No argument on this point has been offered. But, again, the matter is not before the Court because no evidence of such an understanding has been submitted.

Of course, none of this precludes a renewal of the DBA-exclusivity defense to the extent discovery reveals information that removes all issue of fact as to the accidental nature of the events or a fulsome presentation of the Department of Labor understanding at summary judgment. The defendant is in need of no permission to take leave, as a matter of right, to raise either or both.

## **CONCLUSION**

It is, therefore, recommended that the defendant's motion to dismiss [Doc. 38] be DENIED.

IT IS SO RECOMMENDED.

                                        s/Bruce Howe Hendricks
                                        United States Magistrate Judge

November 10, 2010
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**