IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Ted Miles Ellison )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Caddell Construction Co., Inc., )<br>)<br>Defendant. )<br>_____ ) | Civil Action No. 6:09-3093-JMC-JDA<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This matter is before the Court on Defendant's motion for summary judgment [Doc. 66] pursuant to Rule 56 of the Federal Rules of Civil Procedure. Specifically, Defendant alleges the Defense Base Act ("DBA"), 42 U.S.C. §§ 1651–1654, provides the exclusive remedy for Plaintiff's allegations of injury. Further, Defendants argue Plaintiff has failed to establish the requisite elements for his claims of assault and battery, conspiracy, and gross negligence. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial proceedings in pro se actions and submit findings and recommendations to the District Court.

## **BACKGROUND**

Plaintiff's Complaint alleges he resides in Laurens, South Carolina, and Defendant Caddell Construction Company, Inc. ("Caddell") is a company located in Montgomery, Alabama. [Doc. 1 at 2.] Plaintiff, a former employee of Caddell, contends he was injured while working at a construction site of the U.S. Consulate, located in Juarez, Mexico. [Doc. 1 at 3.] Plaintiff alleges Caddell employees Shane Stokes[1] ("Stokes") and Marco Diaz ("Diaz"), acting in "an official capacity representing Caddell," conspired to and did

---

[1] Shane Stokes was improperly identified in Plaintiff's Complaint as Shayne Stokes. [*See* Doc. 27 ¶ 9.]

cause additional bodily harm to Plaintiff after he was initially injured on the job. [*Id.* at 3.] Plaintiff specifically asserts that, while he was under physical and mental duress from job-related injuries, a substance was injected into Plaintiff's body by Diaz, causing Plaintiff bodily harm. [*Id.*] Plaintiff alleges that this injection was given by Diaz for the purpose of masking Plaintiff's job related injuries. [*Id.*]

Plaintiff asserts a claim of gross negligence against Caddell between the dates of August 25, 2007 and September 14, 2007 for its failure to obtain proper medical care for his job injuries as well as for injuries caused by the injection.[2] [*Id.*] Plaintiff also alleges claims for assault and battery against Diaz[3], and claims of conspiracy to conceal a work place injury against Diaz and Stokes[4]. [*Id.* at 6.] Plaintiff seeks to have "all the people involved to be prosecuted to the fullest extent of the law." [*Id.* at 8.] Plaintiff also seeks past and future medical damages, damages for loss of earning capacity[5], and punitive damages in "the amount listed on Caddell's tax return listed as profit for the year of 2007." [Doc. 13.]

---

[2]Plaintiff's suit does not seek justice for the initial job-related injury. Rather, Plaintiff complains of the subsequent and allegedly negligent and intentional acts, which he contends produced additional injury.

[3]Diaz is not a named defendant in this action. Because Diaz is alleged to have been acting in his "official capacity representing Caddell" [Doc. 1 at 3], Plaintiff appears to seek to impute Diaz's actions to Caddell.

[4]Stokes, like Diaz, is not a named defendant in this action. Plaintiff appears to seek to impute Stokes' actions to Caddell.

[5]Plaintiff appears to specifically seek actual damages in the amount of $5,629,876.91 for loss of earning capacity, though his damages request is not clear regarding whether this amount represents the total value he seeks for damages or whether the amount represents only loss of earning capacity damages.

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

4

## **DISCUSSION**

Caddell argues it is entitled to summary judgment because the DBA is Plaintiff's exclusive remedy, barring Plaintiff's tort claims. In the alternative, Caddell argues it is entitled to summary judgment on Plaintiff's tort claims because Plaintiff has failed to establish the elements for his assault and battery cause of action, his conspiracy cause of action, and his gross negligence cause of action. Finally, Caddell argues Plaintiff has failed to prove proximate cause as to any alleged damages.

**Exclusivity Under the Defense Base Act**

Congress enacted the DBA, 42 U.S.C. § 1651, et seq., in 1941. The DBA incorporates the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, et seq., and its scheme of uniform workers' compensation coverage. 42 U.S.C. § 1651(a). Like the LHWCA, the DBA contains an exclusivity provision:

> The liability of an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor) under this chapter shall be exclusive and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) coming within the purview of this chapter, under the workmen's compensation law of any State, Territory, or other jurisdiction, irrespective of the place where the contract of hire of any such employee may have been made or entered into.

42 U.S.C. § 1651(c). Accordingly, the DBA affords the sole remedy for injured employees and contractors working on overseas military bases or land used for military purposes. *See Ladd v. Research Triangle Inst.*, 335 F. App'x 285, 287, 289 (4th Cir. 2009); *Flying Tiger Lines, Inc. v. Landy*, 370 F.2d 46, 52 (9th Cir. 1966); *Makris v. Spensieri Painting, LLC*, 669 F. Supp. 2d 201, 206 (D.P.R. 2009).

Thus, the exclusivity provision of the DBA requires that, if Plaintiff's injuries fall within the scope of the DBA, he cannot pursue common law claims against Caddell arising out

5

of his injuries. Plaintiff does not challenge that the DBA provides an exclusive remedy for a covered injury. Instead, he argues his injuries do not fall within the scope of the DBA.

The DBA does not define injury, so the Court must look to the definition of injury in the LHWCA. The LHWCA defines injury as an

> accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment.

33 U.S.C. § 902(2). Accordingly, for Plaintiff's injuries to fall within the scope of the LHWCA, and thus the DBA, they must be accidental injuries arising out of and in the course of employment.[6]

***Accidental***

"Accidental" is left undefined by the LHWCA and the DBA. As discussed in *Taylor v. Kellogg Brown & Root, Inc.*, No. H-10-2043, 2011 WL 2446429, at *5 (S.D. Tex. May 20, 2011), courts have taken two divergent analytical approaches to determining whether an injury was accidental. This Court has previously adopted the approach outlined in *Fisher v. Halliburton*, 703 F. Supp. 2d 639 (S.D. Tex. 2010). *See Ellison v. Caddell Constr. Co.*, No. 6:09-3093, 2010 WL 5125338, at *3 (D.S.C. Nov. 10, 2010) (Report and Recommendation recommending that Defendant's motion to dismiss be denied, found at Docket Entry 54), *adopted by* 2010 WL 5126358 (D.S.C. Dec. 9, 2010) (Order adopting Report and Recommendation, found at Docket Entry 61). Following the plain language of the statute, the court in *Fisher* deviated from the trend of finding an intentional tort

---

[6]Alternatively, Plaintiffs injuries would fall within the scope of the LHWCA if they were caused by the willful act of a third person directed against Plaintiff because of his employment. However, neither party alleges, and therefore the Court will not discuss, that a third party injured Plaintiff *because of* his employment.

6

exception to the exclusivity of the DBA.[7] *Fisher*, 703 F. Supp. 2d at 653, 657 (finding that neither the LHWCA nor the DBA includes an intentional tort exception). The *Fisher* approach instead focuses on the nature of the injury.[8] *Id.* at 657.

In *Fisher*, the court held that, for the injury to be accidental and thus covered by the DBA, it must be both undesired and unexpected. *Id.* at 645–53. The court noted that "undesired" required "no elaboration," but with respect to "unexpected," the court explained that "[a]n injury is not an 'accident,' and thus, not compensable if a reasonable person would have had some grounds or reasons for believing that the event was likely to occur. Mere anticipation or uncertain apprehension will not suffice." *Id.* at 647. Therefore, to avoid DBA exclusivity, a plaintiff "must show that the actual event giving rise to his claims was specifically expected." *Id.* at 658.

Further, a plaintiff's injuries must be accidental from the perspective of the employer to be covered by the DBA. The DBA was created "to provide uniformity and certainty in availability of compensation for injured employees on military bases outside the United States." *Davila-Perez v. Lockheed Martin Corp.*, 202 F.3d 464, 468 (1st Cir. 2000) (citing

---

[7]The other approach discussed in *Taylor* holds that an employer's acts with the specific intent to injure an employee fall outside the scope of the LHWCA, *see Childers v. United States*, 12 F.3d 209 (5th Cir. 1993) (unpublished), or that the LHWCA contains an exception to exclusivity for intentional torts, *see, e.g., Roy v. Bethlehem Steel Corp.*, 838 F.Supp. 312, 316 (E.D. Tex. 1993) (collecting cases that recognize an intentional tort exception).

[8]The *Fisher* decision is currently on appeal. The district court stayed its own proceedings and certified, sua sponte, an interlocutory appeal on the following issues:

> Whether the DBA covers only accidents, how to define an accident under the [DBA], whether the willful act of a third party should be narrowly or broadly construed, or if all the foregoing inquiries should be subsumed in an intentional tort exception, the scope of which must also be determined without regard to the facts of the instant case.

*Fisher*, 703 F. Supp. 2d at 665.

*O'Keeffe v. Pan Am. World Airways, Inc.*, 338 F.2d 319, 322 (5th Cir. 1964)).  In exchange for employees getting prompt medical care and benefits for work-related injuries regardless of fault, employers avoid litigation and potentially higher tort liability.  *See Ceres Gulf v. Cooper*, 957 F.2d 1199, 1207–08 (5th Cir. 1992) (quoting *Fed. Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404, 413 (1969) (stating that the exclusivity of the LHWCA counterbalances the imposition of absolute liability)).  Because the DBA is concerned with the relationship between employee and employer, "an employee must demonstrate that [his] claims against *the employer* fall outside the DBA in order to maintain a separate tort action against the employer."  *Taylor*, 2011 WL 2446429, at *7 (emphasis in original).  Accordingly, here, Plaintiff's injury must be accidental from the perspective of Caddell, and whether Diaz desired and expected Plaintiff's injury is irrelevant unless Diaz's liability is attributable to Caddell.[9]  *See id.*

To impute liability to an employer under the DBA for an employee's intentional acts "requires more than mere agency."  *Id.* at *9.  Thus, a plaintiff must demonstrate some basis for imputing liability to the employer.[10]  Here, there remains a material question of fact as to whether Diaz's actions should be imputed to Caddell.  The parties have not specifically briefed this issue; in fact, the Court does not even know what position Diaz holds with Caddell.  [*Compare* Doc. 86-2 at 9 (indicating Diaz was "employed as a medical personnel"), *with* Doc. 81-19 at 1 (indicating Diaz was "an unqualified non medical safety

---

[9]As previously noted, although not clear, a liberal construction of Plaintiff's Complaint indicates that he seeks to impute liability to Caddell for Diaz's actions. [*See* Doc. 1 at 3 (indicating that Stokes and Diaz were "acting in an official capacity representing Caddell" and that Diaz was acting "as a representative of Caddell."] Moreover, the Court has reviewed the entire record and concludes that there is no evidence that Plaintiff's injuries were desired or expected by Caddell. All factual allegations in Plaintiff's Complaint relate to Stokes and Diaz's conduct.

[10]The Court is unaware of any case law specifically addressing which theory of liability, e.g., respondeat superior, vicarious liability, or some other theory, should apply to a determination of whether liability should be imputed to an employer under the DBA.

supervisor"), *and* Doc. 80 at 2 (indicating the injection was given by "a non-medical or a construction worker").] Accordingly, there remains a question of fact regarding whether Diaz's actions should be imputed to Caddell for purposes of determining whether Plaintiff's injuries were accidental, precluding summary judgment at this procedural posture.

### *Arising Out of and In the Course of Employment*

As previously stated, the DBA covers accidental injuries that arise out of and in the course of employment. This "arising out of and in the course of employment" standard relaxes the common law notions of causation:

> Workmen's compensation is not confined by common-law conceptions of scope of employment. The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose.

*O'Leary v. Brown–Pacific–Maxon, Inc.*, 340 U.S. 504, 506–07 (1951) (internal citations omitted). In *O'Leary*, an employee of a government contractor operating in Guam drowned while attempting to rescue two swimmers. *Id.* at 505. The contractor operated a recreation center for its employees near the shoreline, along which ran a dangerous channel. *Id.* Signs prohibiting swimming were posted along the channel. *Id.* The deceased employee had seen swimmers in distress while waiting for a bus at the recreation center. *Id.* The upheld the finding that the employee's death was a covered injury because the employee, at the time of his drowning, was using the recreational facilities sponsored and provided by his employer for the use of its employees and that such participation was an incident of his employment. *Id.*

In *O'Keeffe*, the Fifth Circuit upheld the award of DBA benefits to an employee who worked on Grand Turk Island for a government contractor and was killed while returning

to a military base from a social visit off-base. 338 F.2d 319. The Fifth Circuit stated that "employment in such places as Grand Turk creates a zone of special danger linking the injury with the place of employment. On such an island, lacking in most of the social and recreational facilities usually available to American employees, the individual's recreation is in the service of his employer no less than in his own interest." *Id.* at 325.

In the present case, Plaintiff alleges he was "called in for treatment" and "[u]pon entering a company facility" was instructed to prepare for an injection. [Doc. 76 at 2.] Plaintiff also argues, however, that the injury was not "a result of the scope and course of employment" because it was not "part of [his] job duties while doing construction work" to "[come] in contact with . . . hypodermic needle(s)." [Doc. 80 at 1.] Caddell provides no evidence or argument on this issue[11]; however, evidence in the record indicates a material question of fact exists as to whether Plaintiff's injury arose out of and in the course of

---

[11]The Court notes that under the approach to determining whether an injury arose out of and in the course of employment outlined in *Taylor*, Plaintiff would likely be covered under the DBA if he was on duty at the time the injury occurred. The court in *Taylor* held that the plaintiff's injuries arose out of and in the course of her employment where she was sexually assaulted while on duty but in a break room, and the plaintiff's post in Afghanistan created a "zone of special danger" that linked her injuries to her employment. 2011 WL 2446429, at *5.
    However, in *Jones v. Halliburton*, No. 4:07-cv-2719, 2011 WL 2066621, at *8 (S.D. Tex. May 24, 2011), the court held that a "*particular* condition or obligation of employment overseas (such as environmentally harsh working conditions or restriction to the company cafeteria and dental services), not merely the fact of overseas employment, must create a zone of special danger. Further, the zone of special danger must be one that gives rise to the particular type of injury suffered by the employee." Accordingly, under the *Jones* approach to determining whether an injury arose out of and in the course of employment, the Court would need more evidence to determine whether Plaintiff's employment conditions or obligations would give rise to his particular injury.

Plaintiff's employment.[12]  This question of fact precludes summary judgment at this procedural posture.

**State Law Claims**

Because the question of whether Plaintiff's claims fall under the DBA implicates the Court's subject matter jurisdiction, *see Taylor*, 2011 WL 2446429, at *3, the Court declines to address Plaintiff's state law claims until the Court makes a determination regarding the Court's subject matter jurisdiction to hear those claims.

**Supplemental Motion**

The Court recommends that Caddell be directed to file a supplemental motion addressing the Court's subject matter jurisdiction. The motion and memorandum in support thereof should, at a minimum, address the following: (1) whether Diaz's acts should be imputed to Caddell, including a discussion of Diaz's position(s) with Caddell; (2) what theory of liability should apply to a determination of whether liability should be imputed to an employer under the DBA; and (3) whether Plaintiff's injury arose out of and in the course of his employment with Caddell, including Caddell's regular policies for handling workplace injuries and/or providing medical care following workplace injuries.

---

[12] For instance, significant to its determination on this issue, the Court does not know Diaz's position with Caddell. If Diaz is a medical personnel, as indicated by Plaintiff in one submission to the Court, such evidence might link Plaintiff's injury to his employment because Caddell would have provided medical services to Plaintiff. Further, if Caddell's provision of medical treatment to employees is the only immediate medical assistance available to injured employees, such evidence might link Plaintiff's injury to his employment. *See, e.g., Pulley v. Peter Kiewit Son's Co.*, 223 F.2d 191 (7th Cir. 1955) (holding that the plaintiff's tooth injury after biting into a stone in his food in the cafeteria, further aggravated by dental care provided by the employer, was related to the plaintiff's employment because the plaintiff was stationed in Greenland, which was "an isolated community and the only facilities for water supplies, food, medical and dental care were supplied by defendants"). Additionally, Plaintiff has alleged that Caddell employees, including Stokes and Diaz, transported Plaintiff to and from doctor appointments following his initial workplace injury [*see, e.g.*, Doc. 81 at 2 (indicating that Stokes accompanied Plaintiff to Dr. Rubin Bringas in Juarez)], implying that perhaps Caddell takes some responsibility for providing medical care to injured employees.

Additionally, the Court recommends that Caddell be directed to include its alternative arguments regarding the merits of Plaintiff's state law claims in the event the Court finds Plaintiff's injuries are not covered by the DBA and, therefore, the Court has subject matter jurisdiction to hear those state law claims.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Caddell's motion for summary judgment be DENIED and that Caddell be directed to file a supplemental motion consistent with the recommendations in this Report and Recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br/>
United States Magistrate Judge

August 12, 2011
Greenville, South Carolina